Next case is Elizabeth Council v. OPM 2009-3022. Mr. Spector. Good morning. May it please the Court, Michael Spector on behalf of Elizabeth Council, the petitioner herein. I'd just like to note my client, Mrs. Council, is a housekeeper at Walter Reed. She wanted to be here this morning, but unfortunately she's broken her foot and she's home recuperating. We wish her well, but we assume you can represent her capably. We won't assume that she doesn't care. This case provides, once again, an issue that this Court has addressed a number of times in a number of cases. What's new other than the facts on which we have to defer? Well, Your Honor, I believe that there are two lines of cases in here. One is the Dasarny-Shoemaker line of cases, which has held that the notice is sufficient and just on those facts it's enough. The other are the cases like Vallee and Simpson and those cases where you've held that there are other things in the notice that either aren't appropriate in this case or there are other facts that have shown that either the notice wasn't received or that the notice itself was somewhat deficient. I mean, I know some of these cases were that the notice itself dealt with the contents of the notice. Which of these cases deals with whether or not it's been received? Basically, the Bush case, I believe, dealt with whether it was received or not or whether the notice was sent. That was the case in 1992 that basically set forth the fact that Congress had mandated that notice be sent to all federal annuitants, not just those that had remarried. But in this particular case... Do you agree that if the notice was received here, that's the end of it? There's nothing wrong with the form of the notice? I do believe that in that case, if the notice was received, there is a problem with it, Your Honor. I believe there is. We contend, first of all, that the notice wasn't received. That's Mrs. Counsel's main contention. Very interestingly enough, in this case, there's a precedent to it. Well, wait, wait, wait, wait. You're now arguing that the notice, even if received, was inadequate? I didn't see that argument in your brief. I believe it's in the reply brief, Your Honor. He didn't have a chance to respond. But we did make the argument that if it wasn't received, that basically it was deficient. What's the matter with it? Assuming that you raised it, what's the matter with it? The problem is this. Mr. Counsel did elect health benefits for his wife. He did elect life insurance for his wife. He basically made an indication that he wanted to protect her. You're not talking about the form of the notice. What's wrong with the form of the notice? The form of the notice, as it appears, I believe it's on page 36 to 39 of the appendix. It notes in there, it's very confusing because it talks about health benefits and retirement benefits in the same, basically in the same notice, the same breath. And there's an indication, if you look at the notice, Mr. Counsel had worked for 39 years as a maintenance person at the Naval Surface Weapons Center. Mrs. Counsel is a Yeah, but what's wrong with the notice? You say that notice was deficient. What's wrong with the notice? It's confusing. Why? It's confusing because it makes it seem that if you apply for health benefits, you're basically covered. And if you look at page 36 Where is that? Where? If you look at page 38 of the appendix, joint appendix, it talks about health benefit changes and then where to write. And the way that this notice is set out, the way that it says at the end, if you want to change your health benefits, he writes, changes the health benefits and sends an indication that he's been remarried, sends an indication that he's Well, the thing that's odd about that part of it is that you're, so you're, one of your lines of argument is that in 89, he did the health benefit thing. Yes, sir. And so he thought that at the same time he was doing the survivor thing. That's what he believed. Well, then why did he wait almost 10 years till he saw OPM? Then in the next 10 years, he wasn't getting a reduced annuity, right? So it took him 10 years to figure out that his survivor delegation or whatever hadn't kicked in properly? I believe so, Your Honor. So for 10 years, even though they're not taking a reduced survivor annuity, suddenly at a 10-year point, the light goes on and he says, oh, gee, I'm not getting a reduced annuity. Maybe I need to sign her up. I mean, I don't understand how that could have happened here. Your Honor, I can see how it could have happened, and I can understand the Court's concern on that issue. But federal annuities are always changing. They're always increasing their cost of living allowances. The numbers are always changing. Mr. Counsel has additional help. It took him 10 years, and then what happened at that 10-year period? If he was confused, then why wasn't he confused throughout? Why in 1998 did he suddenly go in and say, I want to do a survivor annuity? Well, I think at that particular point, now his contention was, and Mrs. Counsel's contention was, that it wasn't received within the 2-year time period. But Judge Prost is asking, why did he suddenly discover this problem in 1998? Well, I don't know except because he's deceased now, and according to his wife, he was basically seeking clarification of it at that time. And that is one of the problems. He is deceased now, so there's nothing that we can do about it. And that is a problem, but part of the problem here is that he didn't appeal. He was told then the same thing his wife, his widow, has been told recently, which is you blew it because you didn't meet the 2-year window. And if he were alive, he would be in a position to sort of argue that. He never did. That's absolutely correct, Your Honor, and he did not do that at that time. And Mrs. Counsel didn't do it until after and didn't even approach me until after he was long dead. And so it's just the inequity of it in that he did want this for her, that in fact he claimed at the time that he did not receive the notice, that he did make an effort by demonstration, which we don't have in the other cases, that he did really want to do something for her. Well, that's what you say, but the OPM can't just wait until after the fact and have people come back and say, have the family come back and say, well, he intended this. That's why they have these rules, and the rule wasn't complied with. And there was a notice sent out several times. Well, they contend that it was sent out several times, and I apologize for not particularly answering the question that Judge Dyke asked me, but basically in the beginning what I was saying was that in this case, in fact, there was a problem. In fact, there was a reconsideration of this case, Judge, because Mrs. Counsel had not received notice from the MSPB, even though that was sent to her. There were such problems with her mail, and I think I point that out in my brief, that she has a cluster mailbox at her apartment complex in Maryland, that she had big problems receiving mail, and that, in fact, that was evidenced in the Emergency System Protection Board case. Where does she say she had big problems receiving mail? She had mentioned that, I believe, in the transcript. Where? I didn't read her testimony. It's gone quite that far. Our reader is saying her husband was very organized. If he had gotten this, he would have taken care of it. And then she refers to the receipt of the mail in the cluster of mailboxes. But does she say that she didn't receive mail? Where does she say that? Well, I believe, I can't point to it right now, Your Honor, but I believe that she did throughout the proceedings note that she did have trouble with her mail. Anything further, Mr. Patrick? Nothing at this point, Judge. I'll save some time for rebuttal. We will save it for you. Mr. Bowen. Thank you. May I please the Court? My name is Christopher Bowen, and I represent the Office of Personnel Management, the APELI, in this matter. The government believes that the decision of the Board below should be affirmed for the following three reasons. First, when OPM sent him this notice on January 13, 1999, which is at page 42 of the record, there's no mention in there that if he didn't receive the earlier notices, he might have a ground for a late election. How's he supposed to know? Why doesn't OPM tell somebody when it sends this letter that there's an exception? The letter reads as though the two-year thing is absolute. There's no way of getting around it. In fact, there is a way of getting around it. If you didn't receive the notices, you can make a late election, right? That's correct. So why not tell somebody that? I mean, the poor guy, he gets this letter. He says, oh, it's over with. So he can't understand that there is an exception. Why doesn't OPM tell him about the exception? Well, I have not actually asked the agency about that, but I guess the answer that I would speculate is to is that OPM presumes that people, when they receive the letter, if they have had problems receiving something or feel that they have never received something, will look into what other options they have. But there's no mention in this letter that they ever sent him a notice, is there? Which page of the record was that, sir? 42. It doesn't say anything about, we sent you a notice, at least as I read it. Well, it does say, if you wish to request reconsideration of this decision, you should follow the instructions. It says that, but there's no indication in there that he was supposed to have received a notice, right? That is correct. Not a good letter. It's perhaps not an ideal letter, but it does notify him that he does have the right to seek reconsideration of that decision. What sort of evidence would be sufficient to rebut the kind of affidavit we had in this case from the official, Smith-Toomey? Well, I believe that in one of the cases, I believe it was D'Arcygny, which can be found in 787 F2D 1555, what this court specifically looked at was the fact that they had continued to receive the benefit checks. So, without speculating as to future facts of future cases, if they could show that, you know, we had had a lot of trouble even getting the checks themselves, that I think would go partway towards rebutting the presumption that is provided by the affidavit. Was there evidence here that other mail didn't get through to him? I do not recall seeing other evidence. There was the general testimony in the record about the cluster of mailboxes, and other than that, I do not recall seeing any evidence that other mail had trouble getting through. As this court alluded to earlier, the precedent of this court does specifically support finding that the affidavit as provided by Ms. Mary Beth Smith-Toomey is sufficient as found in Shoemakers v. OPM. This court said that there's no requirement that OPM's proof relate to any specific person, although counsel for the petitioner in this case says that it might be helpful to have specific return receipts. A, the administrative burden upon OPM of keeping track of all of that might simply be too much. Is this case based on sort of a presumption of government regularity? Yes, sir. That is the general presumption. It's basically the mailbox rule, isn't it? That because there's evidence that was mailed, that leads to an inference of receipt, a rebuttable presumption of receipt. That is correct, Your Honor, yes. Does the fact that there were several such notices add to the presumption? It does, Your Honor. That if one went awry, not likely the three would have, unless they were misaddressed. Exactly, Your Honor. And that's where the reasoning in the, I believe, the Shoemakers decision, that they're receiving the checks and the notices are with the checks, I believe. And they're all coming in, and there's no other evidence that that creates a presumption. The notices are sent with the checks? Actually, I should be more careful about that. I thought they were, but I'm not absolutely confident. Your point is that the checks were sent and obviously cashed. Right. And so if they'd been sent to the wrong address, suggesting that perhaps the notices weren't received, there would have been some correction. But the checks were received. Yes. Yes, Your Honor. Just to go out to the second point, the government believes that this reasoning in this line of cases is sound, as this is perhaps just about the only evidence that OPM can put on, you know, is to have someone say, yes, we sent out the notices. This is the type of notice. And just very quickly, we believe that there is substantial evidence in the form of the affidavit that has been found in the past to be sufficient and that there are no other grounds to distinguish this case. And unless the Court has any further questions, I surrender my time. Thank you, Mr. Bowen. Mr. Spector has a little rebuttal time. Thank you, Your Honor. What about the idea that there were multiple checks, and the checks were obviously received, and there were multiple notices? So if one was lost, not likely they were all lost. Well, first of all, Your Honor, I believe that the notice that's sent is basically sent as a pre-sorted first-class mail. That's in the record. So it's not sent with the check. It's sent as a piece of mail. But that doesn't change the thrust of my question, which is obviously the address was right because they were getting the checks. That's correct. And they would have complained if they hadn't been. And there were multiple notices. And if one had not been received, not likely that they all weren't. Well, Your Honor, if Mr. Counsel believed that when he initially did it, and he was diligent about this, he initially placed Mrs. Counsel on his health policy, provided for life insurance for her. When he did that, if he believed that what he had done was sufficient, if he believed that that was enough, then he wouldn't have looked at the other ones. And I'm just looking at page 58. But there's a difference between providing for life and health insurance and providing for an annuity because when you do that, you lower one's current annuity. That's correct. So there might have been a reason for him to do that. You can't just assume that because he provided for health and life insurance that he necessarily would have done the same thing for the survivor's annuity. That's correct, Your Honor. But I believe that we should take into consideration here that Mr. Counsel had retired in 1984. This was 1989. He was far away from the personnel office that he had worked with. He was dealing exclusively with Boyers, which is, even for lawyers, it's very difficult to get through to Boyers in Pennsylvania to talk to them. They're in a cave up there, and they do answer things eventually. But it does take some time. Do they have a mailbox outside the cave? I don't know if they do or not. But I think that he might have. And do we have evidence of a lost mail? Mrs. Counsel did bring that to the attention during, I think we covered this so extensively during the part of time when we were getting the reconsideration part of this case. No, but what I'm asking is, is there any evidence in this record about lost mail? Because that's a significant question. There is for this same case, Your Honor. What does that mean? Well, this case came up, and in fact, Mrs. Counsel, there was a whole series of litigation that came up prior to this particular getting to the merits of this case, because Mrs. Counsel had lost some of the mail for the MSPB documents. Well, I'm not asking you about that. I'm asking you about during the time period in question, when apart from the MSPB notice, was there any evidence of any other lost mail? There's nothing that came to my attention as far as bills or anything like that, no. But I believe Mrs. Counsel did testify to that, that she did have lost mail problems during the MSPB case, during the reconsideration stage. Which was 20 years later, right? I mean, we're talking about something that would have been lost in the mail in 1989, and now we're in 2009. That's correct, Your Honor, but she had lived there the entire time. It's just the same. It's sort of a weak inference that if one piece of mail is lost 20 years later, that there were problems 20 years earlier. Well, there were continual problems, and she did testify to that. But where does she say that? She said that in the earlier receipt. But you didn't include it in the appendix here. It's not part of this record. No, it was never recorded, Your Honor. It was not part of the transcript of this case, but it was recorded. It was part of the earlier part. I would just note that under Thompson, if, in fact, you know, there is a finding that she could be eligible for this, it's basically the way that OPM has deemed to work it out, pursuant to their own regulations, is they would just deduct a portion of the annuity that would make up for the time that's for the deduction that should have taken place before. I have no other questions. Thank you, Mr. Spector. We'll take the case under advisement.